Stephen CONNAUGHTON, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 45581.

Missouri Court of Appeals,
Western District.

Aug. 11, 1992.

William L. Webster, Atty. Gen., James Artelle Chenault, III, Sp. Asst. Atty. Gen., Jefferson City, for appellant.

Terence L. Connaughton, Kansas City, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

## PER CURIAM.

The Director of Revenue appeals from the trial court's reinstatement of Stephen Connaughton's driver's license and automobile registration, reversing an administrative order suspending same for violation of the Motor Vehicle Financial Responsibility Law.

On July 15, 1987, at 2:50 a.m., Stephen Connaughton (hereinafter called the petitioner) was involved in an automobile accident with another driver at the intersection of 89th Street and Holmes in Kansas City. A police report provides the only evidence of the accident's specifics. The report indicates that the police arrived at 2:59 a.m., and sets forth a diagram of the accident scene; the officer attributed the accident to an unlawful left turn by petitioner, who was issued a ticket. The accident report states that petitioner had no insurance, and he, "WAS LATER LOCATED AT BAPTIST HOSPITAL 6600 ROCKHILL RD STATED HE PANICKED OVER HIS INJURIES AND FLED FOR MEDICAL HELP." Both vehicles were towed away. The accident report was signed by Officer Michael Fairbanks.

On July 17, 1987, the Director of Revenue received a notice under § 303.024, RSMo,[1] signed by Michael Fairbanks, titled "FAILURE TO PRODUCE IDENTIFICATION CARD Missouri Motor Vehicle Financial Responsibility Law." The driver is listed as, "Connaughton, Stephen," and under the area designated "Offense Data," the officer filled in the blanks as follows:

Time: 0250 7-15-87

Location: 89th & Holmes

City: Kansas City

County: Jackson

The notice also sets forth a description of petitioner's automobile and license plate number. Apparently, a copy of the accident report was sent with the notice.

On September 18, 1987, the Director sent petitioner a "NOTICE OF FAILURE TO SHOW PROOF OF MOTOR VEHICLE FINANCIAL RESPONSIBILITY." This notice stated that petitioner's license was being suspended because he "failed to have/ show an ID card while operating/owning the above stated vehicle." The notice related that his license and registration would be suspended as of October 18, 1987, and that petitioner must do one of two things before that date: (1) send the Director proof of insurance that was effective on or before July 15, 1987; or (2) surrender his driver's license and license plates to the Director. The notice also said that petitioner had the right to request a hearing. The notice indicated that the purpose of the hearing was, "TO PRESENT INFORMATION OR EVIDENCE WHICH WILL SHOW THAT [HE] DID NOT FAIL TO

---

1. All sectional references are to Missouri Revised Statutes 1986, unless otherwise indicated.

MAINTAIN PROOF OF FINANCIAL RE-SPONSIBILITY."

Through a letter from his counsel, petitioner requested an evidentiary hearing. The Administrative Hearing Officer replied with a letter containing notice that the hearing was set for November 17, 1987, and that the hearing would determine,

> [W]hether or not you are subject to suspension for not complying with the provisions of Mo.Rev.Stat. § 303.025, which require motorists and vehicle owners to maintain financial responsibility.

Petitioner sent in an affidavit in lieu of testimony. In the affidavit, petitioner said that although the officer sent in the form stating that he asked petitioner for his identification card on July 15, 1987, 2:50 a.m., at 89th and Holmes, the officer did not ask him for proof of financial responsibility at that time or location. Petitioner supported his proposition by arguing that the officer's report states, "that your Affiant [petitioner] was not present at the scene of said accident on July 15, 1987, at 2:50 a.m., at 89th and Holmes in Kansas City, Jackson County, Missouri." Petitioner, in his affidavit, concluded that there is no showing by the notification provided the Director that said Peace Officer lawfully stopped the operator at 89th and Holmes in Kansas City, Jackson County, Missouri, and further there is no showing whatsoever that said Peace Officer was engaged in the performance of the duties of his office on July 15, 1987, at 2:50 a.m. Nowhere in his affidavit does petitioner claim that he had the insurance under § 303.025.

On December 8, 1987, the Administrative Hearing Officer issued her findings of fact and conclusions of law in petitioner's case. Her findings of fact were:

> a. On July 17, 1987, the Department of Revenue received notice from the Kansas City, Missouri, Police Department that Stephen Connaughton was operating a 1977 Chrysler on July 15, 1987, and failed to produce an insurance identification card as required in Mo.Rev.Stat. § 303.024(5) (1986).

> b. The petitioner provided an affidavit indicating that "... there is no showing whatsoever if any demand was made upon him at 89th & Holmes or at any other time at that location for the production of an Insurance Identification Card;" as required in Mo.Rev.Stat. § 303.024(5) (1986).

She concluded as a matter of law that the issue to be determined was whether petitioner was in compliance with the provisions of § 303.025. She found that the officer who investigated the accident involving petitioner was engaged in the lawful performance of his duties. She also stated that when the statutes are read as a whole, it is clear that the only useful purpose of § 303.024 is to provide the Director with information to become the basis of a suspension under § 303.025. She found that there was no evidence to support a finding that petitioner was in compliance with § 303.025, and suspended his driver's license and registration for 60 days effective January 11, 1988.

Petitioner timely filed his petition with the circuit court, claiming that the administrative hearing officer's decision should be set aside for various and sundry reasons, including: the decision violates the United States and Missouri Constitutions, the decision is not supported by substantial evidence and is arbitrary and capricious. The Director did not file a responsive pleading to the petition. After argument, the court granted the petition, without further findings on January 14, 1988. The Director appealed, and we remanded the matter so the record of the administrative hearing could be presented to and reviewed by the court. *Connaughton v. Director of Revenue*, 760 S.W.2d 604, 606 (Mo.App.1988).

On April 19, 1991, the Director moved for a change of judge, which was eventually granted. The matter was set for October 31, 1991, and although the docket entry states, "Witnesses sworn, evidence heard," a review of the transcript shows that the attorneys merely engaged in oral argument. The Director made available the administrative record for the court, however, neither party offered any other evidence.

The following day, petitioner filed a motion for a directed verdict, claiming that the Director failed to present the record of the administrative hearing under § 303.290, therefore failing to sustain the burden of proof. On November 12, 1991, the Director responded, correctly stating that the entire administrative file was properly before the court because there is no requirement for the formal evidentiary introduction of the administrative record. *Johnston v. Director of Revenue*, 762 S.W.2d 444, 448 (Mo.App.1988). On November 12, 1991, the court entered an "ORDER SUSTAINING PETITIONER'S MOTION FOR DIRECTED VERDICT AND ORDER SUSTAINING PETITION FOR REVIEW," and held, "[T]hat the Final Decision of the Missouri Department of Revenue issued on December 8, 1987, be reversed and held for naught." The court made no other findings of fact or conclusions of law.

The Director appeals in two points: (1) the court erred in sustaining the motion for a directed verdict because the administrative record was before the court; and (2) the court erred in reversing the decision of the administrative hearing officer because there was sufficient evidence to show that petitioner operated a motor vehicle without maintaining financial responsibility under § 303.025.

Petitioner concedes the Director's first point, without argument. Thus, this court is left to address whether the court erred in reversing the hearing officer's finding that the petitioner was in violation of § 303.025.

In response to the director's second point, petitioner argues that the trial court's reversal of the administrative order is supported because there is no evidence showing that the officer demanded proof of insurance at the scene of the accident or that the Director suspended petitioner's driver's license and registration for failing to "carry insurance." It has been petitioner's position that he was being suspended for failure to produce an insurance identification card pursuant to § 303.024.5. He apparently bases this position on the initial notice of suspension issued September 18, 1987, which is discussed in more detail later.

■ The much cited case of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), governs the standard of review. We shall affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. Where, as here, the trial court makes no specific findings in a case, all factual issues are deemed to support the result reached. *McMurray v. Director of Revenue*, 800 S.W.2d 820, 821 (Mo.App.1990). The trial court resolves conflicts in the evidence and may believe it in whole, in part, or not at all. *Kilpatrick v. Director of Revenue*, 756 S.W.2d 214, 215 (Mo.App.1988). We therefore must accept as true all evidence and inferences favorable to the prevailing party (in this case, the petitioner), and disregard any contrary testimony. *McMurray*, 800 S.W.2d at 821. Furthermore, a license cannot be suspended merely for failing to produce proof of financial responsibility to an officer under § 303.024; the penalty may only be that the Director will shortly request proof of insurance. *Downs v. Director of Revenue*, 791 S.W.2d 851, 853 (Mo.App. 1990).

■ It is clear that petitioner's driver's license and registration were not suspended for failing to produce the proof of insurance to the officer under § 303.024. The instructions on the front of the notice of suspension are very succinct. The petitioner was told to produce proof to the Director that he was insured on or before the date of the accident, or send in his driver's license and license plates. Furthermore, even assuming an ambiguity existed in the initial notice as petitioner argues, petitioner was not prejudiced because the letter giving notice of hearing date clearly stated that the purpose of the hearing was to determine:

> [W]hether or not [petitioner is] subject to suspension for not complying with the provisions of Mo.Rev.Stat. § 303.025, which require motorists and vehicle owners to maintain financial responsibility.

The evidence shows that on July 15, 1987, the officer requested an insurance identification card and the petitioner did not provide any. The officer notified the Director, and provided a copy of the accident report that necessitated the request for proof of insurance. The Director notified petitioner that his driver's license and registration would be suspended in thirty (30) days for failing to provide proof of insurance unless he provided proof that he was insured on the date he had been operating the vehicle and was in an accident. The petitioner requested a hearing, and he was sent notice of the hearing stating specifically that the sole issue of the hearing was to determine whether he failed to maintain financial responsibility in violation of § 303.025. Petitioner presented no evidence that he was insured, and has not provided any such evidence to the two judges who heard his petition.

There is no evidence to support a finding that petitioner had insurance on or before July 15, 1987. The finding of the court below is erroneous. The judgment is reversed and the order of the Department of Revenue suspending his driving privileges and vehicle registration for 60 days is reinstated.